Jason A. Rindosh, Esq.
**BEDI RINDOSH**
1605 John Street, Suite 305
Fort Lee, NJ 07024
Tel: 201.775.4222
Fax: 201.777.3975
jrindosh@berilaw.com
Attorneys for Plaintiffs
Kateryna Panova, Slava Rivkin, Ed.R. and Ev.R.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATERYNA PANOVA, individually, and SLAVA RIVKIN, individually, Ed.R. (a minor child), by and through his Guardian ad Litem, Ev.R. (a minor child), by and through her Guardian ad Litem,<br><br>                    Plaintiffs,<br><br>vs.<br><br>PALISADES INTERSTATE PARKWAY POLICE DEPARTMENT, COREY PATULLO, THOMAS M. SHINE, JEFFREY M. KIMBRO, CARE PLUS NJ, INC., LISA SAUNDERS, PHILLIP CRADDOCK, JOHN and JANE DOE(s) 1-10 (fictitious persons and/or entities yet to be identified).<br><br>                    Defendants. | Civ. Action No.:<br><br><br><br><br><br>**COMPLAINT WITH JURY DEMAND** |

The Plaintiffs Kateryna Panova, Slava Rivkin, Ed.R., a minor, by and through his Guardian ad Litem, Ev.R., a minor, by and through her Guardian ad Litem, by way of this Complaint, say and allege the following:

## INTRODUCTION

1.   This is a civil action brought by Plaintiffs Kateryna Panova, Slava Rivkin, Ed.R., and Ev.R. (hereinafter "Plaintiffs") for civil rights violations arising under title 42 U.S.C. §§ 1983, 1988, and the New Jersey Civil Rights Statute, N.J.S.A. § 10:6-2, based on unlawful arrest, battery, confinement, discrimination, retaliation, intimidation, as well as violations of due process in violation of protections afforded under the First Fourth, and Fourteenth Amendments of the Federal Constitution, as well as protections afforded under the New Jersey State Constitution. Plaintiffs also bring state and common law claims stemming from the same facts, transaction, and occurrence.

## PARTIES

2.   Plaintiff KATERYNA PANOVA is a natural born person who at all relevant times was a resident of Fort Lee, State of New Jersey.

3.   Plaintiff SLAVA RIVKIN is a natural born person who at all relevant times was a resident of Fort Lee, State of New Jersey.

4.   Plaintiff Ed.R. is a natural born person and minor boy who at all relevant times was a resident of Fort Lee, State of New Jersey.

5.   Plaintiff Ev.R. is a natural born person and minor girl who at all relevant times was a resident of Fort Lee, State of New Jersey.

6.    Defendant PALISADES INTERSTATE PARKWAY POLICE DEPARTMENT (hereinafter "Defendant PIP") is a governmental organization or entity organization pursuant to New Jersey law.  Defendant PIP is sued to effect the full declaratory, injunctive relief, and damages demanded by the Plaintiffs.

7.    Defendant   COREY   PATULLO   (hereinafter   "Defendant Patullo") is an individual who at the times relevant and material to this complaint served as a member of Defendant PIP. Defendant Patullo is sued individually to effect the full declaratory, injunctive relief and damages demanded by the Plaintiffs.

8.    Defendant   THOMAS   M.   SHINE   (hereinafter   "Defendant Shine") is an individual who at the times relevant and material to this complaint served as a member of Defendant PIP. Defendant Shine is sued individually to effect the full declaratory, injunctive relief and damages demanded by the Plaintiffs.

9.    Defendant   JEFFREY   M.   KIMBRO   (hereinafter   "Defendant Kimbro") is an individual who at the times relevant and material to this complaint served as a member of Defendant PIP. Defendant Kimbro is sued individually to effect the full declaratory, injunctive relief and damages demanded by the Plaintiffs.

10.   Defendant CARE PLUS NJ, INC. (hereinafter "Defendant Care Plus") is an entity organized pursuant to the laws of the State of New Jersey at the times relevant and material to this complaint. Defendant CarePlus is sued individually to effect the

full declaratory, injunctive relief and damages demanded by the Plaintiffs.

11.   Defendant LISA SAUNDERS (hereinafter "Defendant Saunders") is an individual who at the times relevant and material to this complaint served as an employee/agent of Defendant Care Plus. Defendant Saunders is sued individually to effect the full declaratory, injunctive relief and damages demanded by the Plaintiffs.

12.   Defendant PHILLIP CRADDOCK is an individual who at the times relevant and material to this complaint was a resident of Fort Lee, State of New Jersey. Defendant Craddock is sued individually to effect the full declaratory, injunctive relief and damages demanded by the Plaintiffs.

13.   Defendant John/Jane Doe(s) 1-10 (hereinafter "Defendant Doe(s)") are unknown police officers, supervisors, state employees, private entities or other persons employed or working on behalf of said entities who(m) were involved in the events that gave rise to Plaintiffs' claim for relief. Defendant Doe(s) are sued to effect the full declaratory, injunctive relief and damages demanded by the Plaintiff.

## JURISDICTION AND VENUE

14.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 for Plaintiff's claims under 42 U.S.C. § 1983, § 1988, and the Federal Constitution.

4

15.    Jurisdiction is proper over Plaintiffs' pendent state claims, brought under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, et seq., the New Jersey State Constitution, and the common law pursuant to 28 U.S.C. § 1367.

16.    The constitutional wrongs alleged in this Complaint occurred in Palisades Interstate Park located in the County of Bergen in the State of New Jersey.  Since these wrongs occurred in the District of New Jersey and, upon reasonable belief, all of the parties reside, govern, and/or operate within this district so venue in this Court is proper under 28 U.S.C. § 1391.

17.    This Court has the authority to award costs and fees under 42 U.S.C. § 1988, as well as under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, et seq.

## **FACTUAL BACKGROUND**

18.    Plaintiff Panova is a journalist and mother of two young children, a three-year-old girl, Ev.R., and five-year-old boy, Ed.R., at the times relevant to this Complaint.

19.    Plaintiff Panova is of Ukrainian origin, and she speaks with an accent.

20.    Plaintiff Panova and her children reside in close proximity to the entrance to the Palisades Interstate Park in Fort Lee, New Jersey.

21.   On April 15, 2020, Plaintiff Panova was with her children outside of their apartment located near the entrance to the Palisades Interstate Park.

22.   Prior to April 15, 2020, Plaintiff Panova and her children had been routinely hiking with her children in and around the Palisades Interstate Park.

23.   Outside of the park's entrance was a fence that was taken down with a log in a way that created access to a hill on the side of the entranceway to the park.

24.   Plaintiff Panova had seen the condition of the downed fence for quite some time, and had observed other individuals using it to access the hill into the park for hiking.

25.   In addition, Plaintiff Panova had observed other persons entering their area and carrying their bikes uphill.

26.   On April 15, 2020, Plaintiff Panova, E.R. and E.R. entered the hill through the accessible part of the fence.

27.   Plaintiff Panova and her children used the accessible part of the hill to access a commonly known hiking trail.

28.   There was no sign or posting advising the fence area could not be entered.

29.   Plaintiff, Ed.R. and Ev.R. gained access to the park through the opened fence, and they began walking up the hill without incident.

6

30.   Defendant Craddock was walking by with a woman after Plaintiff and her children had walked up the hill.

31.   Defendant Craddock began shouting at Plaintiff and her children without provocation.

32.   Plaintiff Panova had never met Defendant Craddock and was alarmed by a stranger yelling from afar to her and her children.

33.   Plaintiff Panova attempted to ignore Defendant Craddock.

34.   Plaintiffs are an active family that likes to engage in athletic activities, such as hiking, ice skating, rock climbing, skiing and diving.

35.   Defendant Craddock came uphill and ask Plaintiff Panova if she needed help.

36.   Plaintiff Panova and her children were not in any risk or in danger from walking up the hill to their then-current location.

37.   Defendant Craddock came up the hill closer to Plaintiff Panova.

38.   Defendant Craddock kept insisting Plaintiff Panova needed help.

39.   Plaintiff Panova told Defendant Craddock not to worry as she and her children were fine.

40.   Defendant   Craddock   then   threatened   to   alert   the authorities if Plaintiff Panova and her children did not comply with his demands.

41.   Defendant Craddock, Plaintiff Panova, Ed.R. and Ev.R. had all walked up the hill without incident and there was no identifiable danger threatened to Plaintiff or her children.

42.   Defendant   Craddock   nonetheless   proceeded   to   grab Plaintiff's four-year-old son, Ed.R., around his waist and then put Ed.R. on his lap without consent or authorization.

43.   Plaintiff Panova was horrified at Defendant Craddock's unconsented touching of her son.

44.   Ed.R. was also frightened as he could not even move with the force of an adult male's restraint.

45.   Ed.R. and Plaintiff Panova requested Defendant Craddock to not touch him and put him down, but Defendant Craddock kept E.R. on his lap.

46.   Defendant Craddock also was not in compliance with New Jersey's   mandate   of   wearing   a   mask   and   further   recklessly endangered Plaintiff and her children which put Plaintiff in fear for her and her children's safety.

47.   Plaintiff Panova pleaded with Defendant Craddock to release Ed.R.

48.   Plaintiff Panova told Defendant Craddock she was not comfortable with another person touching her children.

49.  Plaintiff Panova also told Defendant Craddock she was not comfortable with close proximity without a mask.

50.  Defendant Craddock, while holding Ed.R., proceeded to call the police.

51.  Defendants Patullo, Kimbro, and Shine arrived to the scene.

52.  Defendants Patullo, Kimbro, and Shine were able to access the park through the downed fence area and walk up the hill to talk to Plaintiff Panova.

53.  Plaintiff Panova expressed she was uncomfortable Defendant Craddock was holding her child, that she wanted Ed.R. released, and that she wanted to walk back down the hill with her children.

54.  As this occurred during the midst of the ongoing COVID-19 pandemic, there were statewide requirements for social distancing and use of masks.

55.  Plaintiff Panova expressed her concern that none of the Defendants maintained any distancing and remained without masks.

56.  Defendant Craddock also was not wearing a mask.

57.  Defendant Craddock continued to hold Ed.R. during the time Plaintiff Panova conversed with the Defendant officers.

58.  The Defendants prevented Plaintiff Panova from descending the hill under her own free will and volition.

59.   Plaintiff Panova and her children could have easily walked back down without any appreciable risk.

60.   Defendants unreasonably prohibited Plaintiff Panova and her children to descend the hill on their own volition despite there being no actual or threatened harm.

61.   Defendants called for ladders to be brought to the park location.

62.   The ladders were carried up the park's hill by the responding firefighters by walking up the hill with it to Plaintiff Panova's location.

63.   Plaintiff Panova continued to express that she wished to walk back down the hill.

64.   Defendants refused to allow Plaintiff to come down the hill, and further did nothing to address Defendant Craddock's continued holding of E.R. on his lap.

65.   Defendant Patullo physically restrained Plaintiff Panova with force on the cliff.

66.   Plaintiff Panova was holding her minor daughter, Ev.R., who she reluctantly handed to be carried down the ladder as she cried.

67.   Plaintiff then, through substantial and unjustified force of the Defendant officers, was thrown to the ground.

68.   Plaintiff Panova was then dragged with her back against the rocky ground for some distance down the cliff causing her extreme fear and pain.

69.   Defendant Craddock put his hand through Plaintiff Panova's belt loop near her buttocks and tail bone, and she was forcefully carried down the ladder.

70.   Plaintiff Rivkin had come outside and seen some of the events.

71.   Plaintiff Rivkin suggested the officers should let him assist Plaintiff Panova and the children, but they refused.

72.   Once Plaintiff and her children were removed from the hill, Plaintiff's children were relinquished to their father, Plaintiff Rivkin.

73.   Plaintiff Panova remained seized and was placed under arrest by Defendant Patullo in front of her husband and children.

74.   Plaintiff Panova was transported to the police station for processing.

75.   At the police station, Defendant Patullo and Defendant Shine began to demand Plaintiff to provide her pedigree information.

76.   Defendant Patullo made intentional, malicious, and condescending statements to Plaintiff Panova in the presence of the other officers.

77.   Plaintiff Panova requested a drink of water.

78.   Defendant Patullo told Plaintiff Panova they had no water, and that the officers wished they had water too.

79.   Plaintiff Panova also was repeatedly asking to go to the bathroom during the time she was held at the police station.

80.   The cell Plaintiff Panova was initially placed in had benches and windows, but there was no toilet or sink.

81.   Defendant Shine told Plaintiff Panova that she was not permitted to go to the bathroom unless she was accompanied by two officers at the same time according to the department's policy.

82.   Defendant Shine told Plaintiff Panova Defendant Patullo was busy, so she could not use a restroom.

83.   Over a span of a few hours, Plaintiff Panova made at least three requests to use the bathroom.

84.   After hours of waiting in the first cell, Defendant Shine took Plaintiff Panova by himself to a different cell where there was a bathroom and sink, but no soap.

85.   Plaintiff Panova requested that Defendant Shine permit her to speak with her husband, Plaintiff Rivkin, or alternatively an attorney.

86.   Plaintiff Panova's requests were not honored, and she Defendant Shine left her cell area.

87.   Defendants discriminated and treated Plaintiff Panova differently because of her Ukrainian background and gender.

88.   Due to the circumstances of being arrested, Plaintiff Panova refused to provide information without the opportunity to consult an attorney.

89.   Plaintiff Panova exercised her constitutional right to ignore the arresting officers' questions and demanded the opportunity to speak with an attorney.

90.   Plaintiff Panova was denied the right to speak with an attorney.

91.   Defendants retaliated or sought to intimidate Plaintiff Panova for attempting to exercise her constitutional rights by needlessly summoning an EMS ambulance.

92.   Plaintiff Panova refused voluntary medical treatment as she had only requested to be provided with water, speak to her family, or speak to an attorney.

93.   Plaintiff Panova never requested an EMS for any emergency medical treatment.

94.   Defendant Patullo charged Plaintiff Panova with indictable offenses under N.J.S.A. § 2C:24-4A(2) for child endangerment, and N.J.S.A. § 2C:29-1A for obstruction of the administration of law.

95.   Defendants, in retaliation to Plaintiff Panova's refusal to accept ambulance treatment she did not request, telephoned the New Jersey Department of Child Protection and Permanency to report a complaint against Plaintiff Panova and Plaintiff Rivkin

regarding child abuse and neglect of their children, Ed.R. and Ev.R.

96.  Defendant Patullo then telephoned Defendant Care Plus after Plaintiff Panova refused to speak with the arresting officers without the presence of an attorney.

97.  On information and belief, Defendant Care Plus has a contract to provide screening services to determine whether persons are so mentally unfit they must be involuntarily committed under state law.

98.  An employee, contractor, or other agent representing Defendant Care Plus, Defendant Saunders, came to the police station and spoke with Plaintiff Panova as part of her evaluation.

99.  Defendant Saunders spoke with Plaintiff Panova for approximately a half hour.

100. At the conclusion of their discussion, Defendant Saunders told Plaintiff Panova was fine and that she did not require further evaluation.

101. Upon information and belief, Defendant Saunders was pressured by the other Defendants to change her recommendation for involuntary commitment after she evaluated Plaintiff Panova.

102. Defendant Saunders, after having already told Plaintiff Panova she would not need any further evaluation, came back after speaking with the other Defendants and notified her that she required further evaluation.

14

103. Defendant Saunders authorized Plaintiff Panova's involuntary commitment to Bergen New Bridge Health and Medical Center.

104. Plaintiff Panova was transported against her will to Bergen New Bridge Health and Medical Center where she was involuntarily committed for ten (10) hours.

105. During the time Plaintiff Panova was at Bergen New Bridge, Plaintiff Rivkin was inquiring as to the whereabouts of his wife to the police.

106. Plaintiff Rivkin was standing with an attorney at the police station who was ready and able to represent Plaintiff Panova.

107. Plaintiff Rivkin was denied access to any knowledge regarding the whereabouts of his wife, and the attorney was denied access to this information and Plaintiff Panova as well.

108. Plaintiff Rivkin was not informed of the whereabouts of his wife for the duration of her involuntary commitment.

109. Defendant Saunders decision to caused Plaintiff Panova's involuntary commitment was an intentional dereliction of her duty.

110. In the alternative, Defendant Saunders' certification Plaintiff Panova was in need of involuntary commitment because she was dangerous to herself or others due to a mental illness in need of a screening was a reckless, grossly negligent, or negligent diagnosis, prognosis and/or medical evaluation and recommendation.

15

111. Bergen New Bridge Health and Medical Center did not find the presence of any drugs or alcohol in Plaintiff Panova's system.

112. Plaintiff Panova was discharged from Bergen New Bridge without any diagnosis of prior or present mental health conditions.

113. After Plaintiff was released, Plaintiff Panova and her criminal defense attorney went to the police station to file a citizen complaint against Defendant Craddock.

114. The officers in the police department incorrectly believed Plaintiffs were filing an internal affairs complaint.

115. Plaintiff Panova was threatened and intimidated by comments from the officer taking the report that she would be arrested and put in prison.

116. In the alternative, Defendant Craddock is a former firefighter, and he had a prior relationship with members of law enforcement in Bergen County whom sought to protect him from a complaint.

117. Due to the false and malicious reports filed by Defendants claiming suspected child and abuse by Plaintiffs, the New Jersey Department of Child Protection and Permanency opened investigations into Plaintiffs.

118. Within two hours of Plaintiff Panova's release from Bergen New Bridge Health and Medical Center, investigators from the New Jersey Department of Child Protection and Permanency arrived at her residence.

119. The case worker employed by the New Jersey Department of Child of Protection and Permanency performing the investigation went to the Palisades Interstate Park location where Plaintiff Panova was arrested.

120. The report of child abuse and neglect against Plaintiff Panova and Plaintiff Rivkin was dismissed as "not established".

121. The designation of "not established" under state law requires that the State of New Jersey maintain a permanent record against Plaintiff Panova and Plaintiff Rivkin.

122. After the first report to the New Jersey Department of Child Protection and Permanency was closed, Plaintiffs were subjected to subsequent anonymous reports of child abuse and neglect made to the New Jersey Department of Child Protection and Permanency that were investigated.

123. Upon information and belief, the anonymous reports to the New Jersey Department of Child Protection and Permanency were made, instigated, or done in conspiracy with Defendants.

124. None of the complaints of child abuse and neglect made to the New Jersey Department of Child Protection and Permanency were established or founded.

125. Plaintiffs suffered numerous invasions of their home and isolated interviews in connection with the New Jersey Department of Child Protection and Permanency's investigations.

126. The Bergen County Prosecutor's Office dismissing and/or downgraded all indictable charges filed by Defendants against Plaintiff Panova.

127. Defendants acted intentionally, maliciously or in reckless disregard of Plaintiffs' constitutional rights.

128. Defendants actions and inactions were performed to intimidate or retaliate against Plaintiffs for the exercise of their constitutional rights.

129. As a direct and proximate result of the acts of Defendants, Plaintiffs suffered severe and permanent injuries including, but not limited to:

a.   Violation of their constitutional rights under the First, Fourth and Fourteenth Amendments of the Federal Constitution;

b.   Violation of their constitutional rights under Article 1, Section 7 of the New Jersey State Constitution to be free from an unreasonable searches and seizures;

c.   Loss of physical liberty;

d.   Fear of imminent peril;

e.   Medical bills incidental to treatment;

f.   Loss of income;

g.   Severe trauma and emotional distress; and

h.   Permanent injuries.

**NOTICE OF CLAIM**

130. Within ninety (90) days of the incident, Plaintiff filed a written Notice of Claim with the Palisades Interstate Parkway Police Department and Defendants as required under the New Jersey Tort Claims Act.

131. Plaintiff submitted this Notice of Claim to support compliance, or at least substantial compliance, with the statutory requirements to bring the state law claims asserted in this Complaint.

132. Based on record from the United States Postal Service, Plaintiff's Notice of Claim was received on or about July 13, 2020.

**COUNT I**

**False Arrest and Imprisonment**

133.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

134. The Interstate Park Police Defendants, while acting under color of state law, arrested Plaintiff Panova.

135. There was no probable cause or constitutional basis for Plaintiff's arrest.

136. Plaintiff was arrested on or about April 15, 2020.

137. Defendants acted with the intention of confining Plaintiff within fixed boundaries, and directed actions that resulted in Plaintiff's confinement that they were aware of.

19

138. Plaintiff's arrest and/or confinement compelled Plaintiff to be imprisoned by Defendants for some appreciable time.

139. Plaintiff was actually harmed by the arrest and/or confinement.

140. Defendants, acting either individually or jointly, had a duty to afford Plaintiff equal protection, liberty and due process under the law, by doing the following both properly investigating any and all warrants with reasonable diligence and employing due diligence and competent analysis in their determination whether to arrest and detain Plaintiff.

141. At all relevant times, Defendants failed to perform their duties and proceeded to arrest, detain and incarcerate Plaintiff.

142. Defendants wrongfully imposed by force or threats an unlawful restraint upon Plaintiff's freedom of movement by arresting and handcuffing her hands behind her back and transporting her to the police station.

143. Plaintiff did not use physical force or otherwise obstruct, impair or prevent the administration of law prior to her arrest.

144. Plaintiff did not attempt to flee.

145. Plaintiff was exonerated and released due to the invalidity of the warrant.

146. Plaintiff was wrongfully seized and suffered a loss of

liberty and freedom of movement as a direct result of Defendants' wrongful conduct.

147. As a result of the foregoing false arrest, Plaintiff's constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT II

### Malicious Prosecution

148.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

149. As a direct consequence of the false accusations made by Defendants against Plaintiff Panova, Plaintiff Panova was charged with an indictable offense.

150. Defendants had no cause or good faith basis to charge Plaintiff Panova with any crime, and knew or should have known that these allegations were utterly baseless.

151. Upon information, knowledge and belief, Defendants motivation to charge and prosecute Plaintiff was malicious.

152. Defendants actions were taken under color of state law, and constitute a malicious prosecution of Plaintiff's person in gross violation of her rights secured under the Federal Constitution, New Jersey Constitution and common law.

21

153. Defendants and/or Defendant Doe(s) orchestrated, directed, conspired with, or worked in concert to maliciously arrest and prosecute Plaintiff.

154. The indictable charges against Plaintiff Panova were dismissed and/or downgraded.

155. The pending charges must be dismissed in Plaintiff's favor.

156. As a result of the foregoing malicious prosecution, Plaintiff's constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiff to suffer physical injuries, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

**COUNT III**

**Abuse of Process**

157. Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

158. Defendants committed an abuse of process by instituting criminal investigations, arrests and other administrative investigations against Plaintiffs including, but not limited to, falsely reporting suspected child abuse.

159. Defendants made an improper, illegal and perverted use of the legal procedure and/or processes.

160.   Defendants had an ulterior motive in initiating legal process, and misused or misapplied legal procedures in a manner not contemplated by law.

161.   No probable cause existed at the inception point where charges were lodged against Plaintiff.

162. As a result of the foregoing abuse of process, Plaintiffs' constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiffs to suffer physical injuries, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT IV

### First Amendment/Free Speech/Right to Petition Retaliation and Intimidation

163.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

164.   The First Amendment of the United States Federal Constitution provides for protection of free speech, which includes the right to freely petition the government for redress without suffering intimidation or retaliation.

165.   In addition, the First Amendment protects the right to speak freely with the media, other members of the community, or directly with member of government about the actions of public

officials   and/or   governmental   entities   without   suffering retaliation or intimidation.

166.   The New Jersey Constitution provides for similar or even greater protections of this constitutional right.

167.   Defendants, acting under color of law or at the direction and control of state actors, retaliated and/or sought to intimidate Plaintiff Panova for petitioning the government for redress.

168.   Upon   information,   knowledge,   and   belief,   Defendants sought and seek to suppress Plaintiffs from making known their opinions known on issues of public concern including, but not limited to, the violation of Plaintiffs' constitutional rights.

169.   When Plaintiffs complained to municipal entities and filed a citizen complaint, Plaintiff was engaged in a protected constitutional activity.

170.   Defendants   intentionally,   willfully,   maliciously, and/or in reckless disregard of the Plaintiffs' constitutional right to make known their opinions to their representatives and petition the government for redress sought to intimidate and/or retaliation against Plaintiffs for engaging in this protected conduct.

171. As a result of the foregoing violation of Plaintiffs' free speech and petition rights, Plaintiffs' constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately

caused Plaintiffs to suffer great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT V

### Due Process

172.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

173. The policy, practice, and custom of Defendants is to obtain putative criminal admissions and to misuse the involuntary commitment state law protocols to violate due process rights.

174. The process employed by Defendants drastically increases the risk of erroneous deprivation because citizens, such as Plaintiff, are deprived the procedural fundamental to the protection of due process of law.

175. The actions and inactions that resulted in this harm include, but are not limited to, the failure to permit Plaintiff Panova receive her constitutional right to counsel.

176. By virtue of the foregoing, Defendants deprived Plaintiff of her constitutional rights secured under both the federal and New Jersey constitutions.

177. Defendants arbitrarily and capriciously deprived Plaintiff of her due process rights in the absence of any countervailing state interest, and caused Plaintiff substantial and unnecessary physical, emotion, financial and/or psychological

25

harm.

178. Plaintiff's substantive due process rights were clearly established at the time of Defendants' acts and omissions, and a reasonable individual would have known that their acts and omissions violate clearly established rights.

179. As a result of the foregoing violation of Plaintiffs' due process rights, Plaintiffs' constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiffs to suffer physical injury, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

<u>**COUNT VI**</u>

**Equal Protection**

180. Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

181. Defendants intentionally, maliciously, and completely irrationally targeted Plaintiffs acting under color of law in a manner that was wholly unjustified, arbitrary and capricious.

182. Plaintiffs were arbitrarily discriminated against by selective targeting for violations, investigation, charges and other disparate enforcement of state law.

183. There was no legitimate basis for the conduct of Defendants, and the selective enforcement of legal standards

against Plaintiff Panova, a female of Ukrainian descent, violated Plaintiffs' right to equal protection under the law.

184. As a result of the foregoing violation of Plaintiffs' equal protection rights, Plaintiffs' constitutional rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiffs to suffer great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

<u>**COUNT VII**</u>

**Municipal Liability**

185. Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

186. This Count is alleged against Defendants for (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which this Complaint is made; or (3) for their conduct that showed a reckless or callous indifference to the rights of others.

187. Defendants maintained inadequate customs, policies, practices, supervision, and trainings that were likely to lead to the violation of individual civil rights when their officers, employees, or agents they are responsible for under state law performed their duties.

188.  Defendants' custom, policy, or repeated practices are tantamount to condoning and tacitly encouraging the abuse of the police power, and disregard for the constitutional rights of citizens, such as Plaintiff.

189.  Upon information and belief, Plaintiff alleges the acts or omissions alleged are the legal, proximate, foreseeable, and actual result of inadequate and deficient customs, policies, patterns, training, supervisions, and practices of deliberate indifference by Defendants causing repeated violations of constitutional rights, which have included, but are not limited to, unlawful deprivations of civil rights, providing false or misleading information to effect detention, arrest, imprisonment, civil commitment, and false charges against Plaintiffs.

190.  Defendants had a duty to intervene in to prevent the unlawful and unconstitutional deprivations of Plaintiffs' constitutional rights.

191.  The aforementioned acts or omissions alleged are the proximate result of customs, policies, patterns, trainings, supervisions, and practices of deliberate indifference by Defendants.

192.  Defendants are liable to Plaintiff as a result of the conduct of their employees, agents, and servants because they failed to remedy the wrongs committed after they occurred, created the policy or custom under which such unconstitutional practices

occurred, and have acted intentionally, with deliberate indifference, or with gross negligence in managing subordinates who(m) caused Plaintiff to suffer a constitution deprivation.

193.  Plaintiff has been damaged as a result of the deliberate indifference of Defendants to the constitutional rights of citizens.

194. As a result of the foregoing municipal policy, pattern of practice, or customs, Plaintiffs rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiffs to suffer physical injury, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT VIII

### Supervisory Liability/Refusal to Prevent

195.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

196.  Defendants, acting under color of law, violated Plaintiffs' Fourth and Fourteenth Amendment rights to liberty by detaining Plaintiff Panova, falsely arresting and charging her, failing to provide proper accommodations while booking her, referring her for involuntary commitment, and filing a suspected child abuse report against her without a good faith basis.

197.  On information and belief, Defendants' aforementioned

conduct is a custom or policy of Defendants.

198. The acts of individual officers and/or employees deprived Plaintiff of her due process and other constitutional rights.

199. No Defendant sought to remedy the deficient policies carried out by their subordinates, and failed to reform ongoing customs and practices in order to reduce the likelihood of future constitutional violations by subordinates.

200. Defendants had knowledge or would have possessed knowledge had they diligently exercised their duties to instruct, train, supervise, control and discipline the subordinate Defendants.

201. Defendants should have had knowledge the wrongs against Plaintiffs were about to be committed, and they had the power to prevent or aid in preventing the commissions of wrong against Plaintiffs.

202. Defendants, or their employees or agents acting in a supervisory authority, were intentionally, recklessly, knowingly, and/or deliberately indifferent to the adequacy of training policies or supervision processes, which amounted to a failure to train and supervise their subordinates that directed and proximately caused Plaintiff's injuries and violations of Plaintiffs' constitutional rights.

203. As a result of the foregoing refusal to prevent and

30

failure by supervisory personnel, Plaintiffs rights secured by the Federal Constitution, New Jersey State Constitution, and common law were violated which proximately caused Plaintiffs to suffer great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT IX

### Excessive Force

204.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

205.  Defendants utilized excessive, unjustified and unreasonable force upon Plaintiffs.

206.  Under the circumstances presented, Defendants conduct was excessive and unreasonable.

207.  As a direct and proximate result of Defendants' excessive force, Plaintiffs suffered physical damage, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT X

### Battery

208.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

209.  Defendants touched Plaintiffs Panova, Ed.R, and Ev.R.

31

with the intent to harm or offend them.

210.  Plaintiffs did not consent to the touching.

211.  Plaintiffs were harmed and offended by Defendants' conduct.

212.  As a direct and proximate result of Defendants' actions. Plaintiffs suffered damages.

## COUNT XI

### Negligence

213.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

214.  Defendants, including their officers, employees, servants, and agents, owed Plaintiff a duty of care in the execution of arrests, provide accurate information about a person's status after being arrested, to refrain from arresting persons when conduct is not a crime under state law, and to accurately inform a person of his or her record.

215.  Defendants had a duty of care in exercising their awesome power to refer individual for involuntary civil commitments for medical reasons without medical consent.

216.  Defendants breached their duty of care owed to Plaintiff Panova.

217.  As a direct and proximate result of Defendants' negligence, Plaintiffs suffered physical injuries, great anxiety,

humiliation, embarrassment, economic damages, and other related injuries.

## COUNT XII

### Negligent Hiring, Training and Supervision

218.  Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

219.  Defendants, or their employees, servants, or agents, owe a duty of care to Plaintiff to prevent injuries, loss of liberty, abide by the strictures imposed by state law, and abide by the requirements imposed by the Federal and New Jersey Constitutions.

220.  Defendants, or their employees, servants, or agents, owed a duty to Plaintiff to exercise the same level of diligence as a reasonable, prudent or careful person would put into the same position or similar circumstances.

221.  Defendants, or their employees, servants, or agents, knew or should have known through the exercise of reasonable diligence that their subordinate employees were not properly trained and supervised.

222.  Defendants, or their employees, servants, or agents, knew or should have known through the exercise of reasonable diligence that Plaintiffs were liable to suffer a direct and proximate result of Defendants' negligent hiring, training, retaining, and supervising their officers, employees, and/or

33

agents.

223.   As a direct and proximate result of Defendants' negligent hiring, training and/or supervision, Plaintiffs suffered foreseeable physical injuries, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT XIII

### Respondeat Superior for State Law Claims against Public Entity Defendants

224.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

225.   The actions and inactions of Defendants' officers, employees, servants, or other agents were undertaken within the scope of their employment and in furtherance of their duties.

226.   The tortious actions and inactions by Defendants' officers, servants, or agents were undertaken within the scope of their employment, and in furtherance of Defendants' interest.

227.   In the alternative, Defendants are responsible for the actions and inactions of officers, employees, servants, or other agents under applicable state law agency principles.

228.   Defendants are liable for Plaintiff's state law claims under the doctrine of respondeat superior or applicable agency principles under New Jersey law.

## COUNT XIV

### Conspiracy

229.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

230.   Defendants acted in concert to subject Plaintiff Panova to the deprivation of her civil rights including, but not limited, by entering into an agreement to arrest Plaintiff and subsequently refer her for civil involuntary commitment.

231.   Defendants made overt acts in furtherance of their civil conspiracy to subject Plaintiff to civil rights violations and other rights at common law.

232.   As a direct and proximate result of the civil conspiracy, Plaintiffs were caused physical and mental suffering and other permanent injuries.

## COUNT XV

### Aiding and Abetting

233.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

234.   Defendants pursued a common plan or design to inflict wrong against or an injury on Plaintiff.

235.   Each Defendant had at least a general awareness of the other Defendants' tortious or unconstitutional conduct.

236.   Each Defendant gave substantial assistance to the other Defendants in the commission of tortious and/or unconstitutional conduct.

237.   Each Defendant provided substantial assistance that proximately caused Plaintiffs' injuries.

238.   Each Defendant's conduct, separately considered, constitutes a tort against Plaintiffs.

239.   Defendants furthered the infliction of the wrongs and injuries by cooperating and lending aid.

240.   Defendants are separately liable to Plaintiffs for aiding and abetting the commission of a tort and/or unconstitutional conduct against Plaintiff.

241.   As a direct and proximate result of Defendants' aiding and abetting, Plaintiffs suffered physical injuries, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

## COUNT XVI

### New Jersey Civil Rights Act

242.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

243.   At all relevant times, the conduct of Defendants was subject to the New Jersey Constitution and New Jersey Civil Rights Act.

244.   The New Jersey Constitution offers protections and guarantees to citizens of New Jersey that exceeds the protections afforded by the Federal Constitution and complementary statutes.

245.   At all relevant times, Defendants, acting individually or jointly, by or through their employees, servants or agents, interfered, or attempted to interfere, by threats, intimidation, or coercion, with the exercise and enjoyment by the Plaintiff of due process, freedom from unreasonable searches and seizures, and other rights secured under the New Jersey Constitution.

246.   At all relevant times, Defendants acted under the color of State law.

247.   As a result of Defendants' violations, individually or jointly, through their employees, agents, or servants, deprived Plaintiff of liberty and constitutional rights in violation of his rights secured under the New Jersey State Constitution.

## COUNT XVII

### Per Quod

248.   Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

249.   At all times relevant to this Complaint, Plaintiff Rivkin and Plaintiff Panova were husband and wife.

250.   At all times relevant to this Complaint, Ed.R. and Ev.R. were the minor children of the marriage between Plaintiff Rivkin

and Plaintiff Panova.

251. As a direct and proximate result of Defendants' negligence and civil rights violations, Plaintiff Panova has suffered the loss of services and usual consortium with her husband.

252. As a direct and proximate result of Defendants' negligence and civil rights violations, Plaintiff Rivkin has suffered the loss of services and usual consortium with his wife.

253. As a direct and proximate result of Defendants negligence and civil rights violations, Plaintiffs Rivkin and Panova will incur medical costs, care and angst for the loss of consortium with their minor children.

254. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered physical injuries, great anxiety, humiliation, embarrassment, economic damages, and other related injuries.

255. Defendants are liable for Plaintiffs' derivative injuries as per quod damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter relief as follows:

a. A declaration that Defendants' conduct violated the First, Fourth and Fourteenth Amendments to the U.S. Constitution, Plaintiffs' rights secured under the New Jersey

Constitution, and under New Jersey's common law based upon the
evidence adduced at trial or otherwise;

b.   A mandatory injunction compelling the dismissal of any
and all pending state criminal or disorderly person charges
against Plaintiff Panova;

c.   A mandatory injunction requiring that Defendants
possessing any arrest information arising from the actions
complained of as unconstitutional in this Complaint to collect
and deliver to the Plaintiff all such records, and to further
expunge or delete all such information from their records;

d.   Enter judgment in favor of Plaintiffs against
Defendants, jointly and severally, awarding compensatory,
consequential, and punitive damages to Plaintiffs in an amount
of $3,000,000;

e.   Enter judgment in favor of Plaintiff against
Defendants, jointly and severally, awarding special damages,
including but not limited to past, present and/or future wage
loss, income and support, medical expenses, physical pain and
mental suffering, and other damages in a sum to be determined
according to proof;

f.   Reasonable attorneys' fees, costs and disbursements of
this action, including pursuant to 42 U.S.C. § 1988;

g.   Costs of suit;

h.   Prejudgment interest;

39

i.   Any other further relief as this Court deems just and proper.

DATED: January 6, 2021          s/ Jason A. Rindosh
                                Jason A. Rindosh, Esq.
                                **BEDI RINDOSH**
                                1605 John Street, #305
                                Fort Lee, NJ 07024
                                Tel: 201.775.4222
                                Fax: 201.777.3975
                                jrindosh@berilaw.com
                                Attorneys for Plaintiffs

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Seventh Amendment of the Federal Constitution, Plaintiff hereby requests a trial by jury on all issues so triable.

DATED: January 6, 2021          s/ Jason A. Rindosh
                                Jason A. Rindosh, Esq.

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I, Jason A. Rindosh, the undersigned attorney of record for Plaintiff do hereby certify to my own knowledge and based upon information available to me at my office, that the matter in controversy is not the subject of any other action now pending in any court or in any other jurisdiction or administrative proceeding except for the charges pending against Plaintiff Panova Complaint No. 288-S-000087 in the Court of the Palisades Interstate Park.

DATED: January 6, 2021          s/ Jason A. Rindosh
                                Jason A. Rindosh, Esq.

41